# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
OMARY ROCHA, \*
Executor for the Estate of \*
NESTOR ROCHA, \*
                                        \*    No. 16-241V
             Petitioner,      \*    Special Master Christian J. Moran
                                        \*
v.                                  \*
                                        \*    Issued: February 2, 2024
SECRETARY OF HEALTH    \*
AND HUMAN SERVICES,    \*
                                        \*
             Respondent.      \*
* * * * * * * * * * * * * * * * * * * *

<u>Richard Gage</u>, Richard Gage, P.C., Cheyenne, WY, for petitioner;
<u>Carol L. Gallagher</u>, Carol L. Gallagher, Esquire, LLC, Linwood, NJ, former counsel for petitioner;
<u>Kimberly S. Davey</u>, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION GRANTING ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]

       The petitioner, Omary Rocha, is pursuing a claim that the influenza vaccine administered to her late husband, Nestor Rocha, on October 18, 2013, caused him to suffer from vasculitis and other related complications that resulted in his death. Ms. Rocha seeks compensation under the National Vaccine Injury Compensation

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. This posting will make the decision available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

Program, 42 U.S.C. §§300aa-10 through 34 (2012).  While her claim is still pending, Ms. Rocha filed a motion for an award of attorneys' fees and costs on an interim basis.  For the reasons explained below, Ms. Rocha is awarded $361,156.23.

## **Procedural History**

Ms. Rocha initially retained Attorney Carol Gallagher in September 2014.  Pet'r's Appl'n for Award of Interim Attorneys' Fees and Reimbursement of Costs, filed Dec. 22, 2022, Tab H (Ms. Gallagher timesheets) at 1.  The petition was filed on February 18, 2016.  Ms. Rocha later filed medical records and affidavits in support of her petition.

The Secretary reviewed this material and recommended against compensation.  Resp't's Rep., filed Oct. 31, 2016.  The Secretary challenged petitioner's claim that the influenza vaccine caused Mr. Rocha to suffer from vasculitis and, furthermore, that vasculitis caused Mr. Rocha's death.  Id. at 12-13.  Part of the deficiency, according to the Secretary, was that petitioner did not present an expert opinion linking the vaccination to the alleged condition.  Id. at 13.

Following the Rule 4(c) report, petitioner proceeded to file an expert report on causation from Dr. Lawrence Steinman.  Exhibit 21.  Because of deficiencies in Dr. Steinman's report, petitioner was ordered to supplement it.  Order, issued Mar. 7, 2017.  Petitioner did so on June 15, 2017.  Exhibit 46.  Respondent filed a responsive report from Dr. Mehrdad Matloubian on October 23, 2017.  Dr. Matloubian's report was also deficient and respondent was provided additional time to supplement the report.  Order, issued Nov. 8, 2017.  Respondent filed the supplemental report on January 10, 2018.  Exhibit BB.  Petitioner then filed another report from Dr. Steinman on April 10, 2018.  Exhibit 49.

Dr. Steinman and Dr. Matloubian disagreed whether Mr. Rocha suffered from vasculitis prior to his death.  Order, issued May 9, 2018, at 1.  Because Mr. Rocha's treating physicians could offer helpful opinions, the parties were ordered to solicit statements from them.  Id. at 2.  The letters were sent to the treating physicians on August 21, 2018.  Pet'r's Status Rep., filed Sep. 6, 2018.

During a status conference on October 25, 2018, the parties reported that they had no success soliciting information from the treating physicians.  Order, issued Oct. 26, 2018, at 1.  During that conference, the attorneys discussed

retaining an expert pathologist to opine on the vasculitis diagnosis.  Id.  However, Ms. Gallagher expressed reticence about doing so due to the costs associated with retaining a second expert.  Id.  Ms. Rocha was encouraged to move for interim fees if the costs associated with expert reports were becoming a burden on her efforts to build a case on entitlement.  Id. at 2.

On January 17, 2019, Ms. Rocha moved for an award of attorneys' fees and costs on an interim basis.  This first motion requested $105,550.55 in attorneys' fees for Ms. Gallagher; $24,110.43 in costs paid by Ms. Gallagher; and $1,000.00 in costs paid for by Ms. Rocha.  The components of Ms. Gallagher's request for fees included the following:

| Ms. Gallagher's Original Request | | | |
|---|---|---|---|
| Years | Number of Hours | Hourly Rate | Subtotal |
| 2014-2016 | 151.15 | $350.00 | $52,902.50 |
| 2017 | 67.35 | $363.00 | $24,448.05[2] |
| 2018 – 1/17/2019 | 70.50 | $400.00 | $28,200.00 |
| Total | | | $105,550.55 |

Pet'r's Mot. for Interim Fees and Costs, filed Jan. 17, 2019, at 6.

The first motion for an interim award was granted in part and denied in part.  First Fees Decision, issued April 30, 2019.  The April 30, 2019 Decision awarded all costs incurred by both Ms. Gallagher and Ms. Rocha.  On the other hand, the First Fees Decision refrained from awarding any attorneys' fees for Ms. Gallagher.  The undersigned described the amount of the request (more than $105,000) as "stunning" and stated that Ms. Gallagher should exercise appropriate billing judgment when submitting any future motions.

Ms. Rocha, acting through Ms. Gallagher, responded with a series of motions.  On May 14, 2019, she filed a motion for leave to file a motion for review; on May 16, 2019, she filed a motion for reconsideration; also, on May 16, 2019, she filed a second motion for attorneys' fees and costs on an interim basis.  The undersigned stated that filing a motion for leave to file a motion for review was not necessary.  Order, issued May 22, 2019.  The undersigned denied the motion for reconsideration.  Order, issued May 22, 2019.  The denial of the motion

---

[2] Ms. Gallagher's chart contains a typographical error in that it presents the amount as $24,448.50.  This 45-cent difference carries through to the total amount claimed as well.

3

for reconsideration (1) noted that Ms. Rocha had already expressed an intent to file a motion for review and (2) expressed an intention to follow the instructions of any appellate authority.

On May 30, 2019, Ms. Rocha acted in accord with her previously announced intentions by filing a motion for review of the First Interim Fees Decision. The Secretary responded. Because of the overlap between the issues in the second motion for interim fees and the motion for review, the second motion for interim fees remained unadjudicated.

Meanwhile, Ms. Rocha and the Secretary continued to litigate the claim that the vaccine harmed Ms. Rocha's husband. For example, the parties presented reports from the pathologists.

When it appeared that the parties had completed the submission of opinions from their experts, see Pet'r's Status Rep., filed Dec. 17, 2019, the case was poised to move to the next phase. In this stage, the parties would submit briefs regarding entitlement. See order filed Dec. 20, 2019. Upon receipt of this order, Ms. Rocha reversed course and determined that she wanted to file another expert report, which she filed on March 12, 2020. Exhibit 84.

A status conference was held on May 7, 2020. The Secretary requested an opportunity to respond to the most recent report from Ms. Rocha's expert. In addition, Ms. Gallagher announced an intention to file a motion to withdraw as counsel. The undersigned advised that Ms. Gallagher's motion would not be granted automatically as the case had been pending for many years.

Ms. Rocha filed a motion to withdraw the pending motion for review of the First Interim Fees Decision on May 14, 2020. The Court granted that motion the same day. The withdrawal of motion for review allowed the Clerk's Office to enter judgment in accord with the First Interim Fees Decision, which happened on June 2, 2020.

Before the Clerk's Office entered judgment, Ms. Rocha filed a third motion for an award of attorneys' fees and costs on an interim basis on June 9, 2020. Ms. Rocha essentially sought the same amount of attorneys' fees for Ms. Gallagher as had been denied previously.

The Second Fees Decision, issued June 11, 2020, denied the June 9, 2020 motion for attorneys' fees. 2020 WL 3792211. The rationale was the same as the

rationale in the First Fees Decision---Ms. Gallagher has not exercised appropriate billing judgment.  The undersigned noted that Ms. Rocha could file a motion for review, which, she, in fact, did.  However, Ms. Gallagher should not expect a previously rejected proposal to be accepted simply because it is repeated.

Ms. Gallagher was replaced as counsel of record by Attorney Richard Gage on June 16, 2020.  Mr. Gage has represented Ms. Rocha since then.

The parties were directed to argue their positions through memoranda.  Order, issued July 8, 2020.  From the timesheets, it appears that the primary draftsperson for Ms. Rocha's brief was another attorney who worked with Mr. Gage, Kristen Blume.  See Pet'r's Appl'n, tab E.  The first memorandum was filed on October 22, 2020.  However, the brief did not discuss all the expected topics.  Thus, Ms. Rocha was given a second opportunity to advance her case.  See Orders issued Oct. 26, 2020 and Nov. 4, 2020.  Mr. Gage seems to have taken the lead in revising the brief, which was filed on Nov. 20, 2000.  See Pet'r's Appl'n, tab D.

The Secretary challenged Ms. Rocha's entitlement to compensation.  See Resp't's Prehear'g Br., filed Feb. 4, 2021.

Ms. Rocha defended her claim for compensation.  See Pet'r's Prehear'g Reply, filed Mar. 22, 2021.  Ms. Blume was the primary author.  See Pet'r's Appl'n, tab E.

The case proceeded to a hearing on December 1, 2021 through December 3, 2021.  Ms. Rocha called her daughter, Dr. Steinman, and Dr. Rostad.  The Secretary called Dr. Matloubian and Dr. Ducatman.  Following the hearing, the parties were directed to file briefs.  Order, issued Dec. 6, 2021.

Ms. Rocha filed a primary brief on March 9, 2022 and her reply brief on June 8, 2022.  In between, the Secretary submitted his post-hearing brief on May 2, 2022.

Ms. Rocha filed the pending motion for attorneys' fees and costs on December 28, 2022.  Ms. Rocha later clarified aspects of her request.  Pet'r's Status Rep., filed Jan. 24, 2024.  Components of this modified request are:

| Summary of Requests | |
|---|---:|
| Mr. Gage's Fees | $70,725.30 |
| Ms. Blume's Fees | $44,879.80 |
| Mr. Gage's paralegals (total) | $8,313.40 |
| Mr. Gage's Non-Expert Costs | $4,153.32 |
| Mr. Gage Expert Costs | $153,363.75 |
| Ms. Gallagher's Fees | $158,585.45 |
| Ms. Gallagher's Non-Expert Costs | $426.34 |
| Ms. Gallagher's Expert Costs | $3,000.00 |
| Total | $440,447.36 |

Although the First Fees Decision had deferred adjudication of Ms. Gallagher's fees due to questions about her billing, the December 22, 2022 motion did not present any specific arguments defending her charges.

The Secretary deferred an assessment of the motion for interim fees to the special master. Resp't's Resp., filed Dec. 29, 2022. Ms. Rocha did not reply, making the motion ready for adjudication.

## Analysis

The pending motion raises a series of sequential questions, each of which requires an affirmative answer to the previous question. First, whether Ms. Rocha is eligible under the Vaccine Act to receive an award of attorneys' fees and costs? Second, whether, as a matter of discretion, Ms. Rocha should be awarded her attorneys' fees and costs on an interim basis? Third, what is a reasonable amount of attorneys' fees and costs? These questions are addressed below.

### 1. Eligibility for An Award of Attorneys' Fees and Costs

Since Ms. Rocha has not received compensation from the Program, she may be awarded "compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1). As the Federal

Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs. Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).

"Good faith" is a subjective standard.  Id.; Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she honestly believes that a vaccine injury occurred.  Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at * 5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  The Secretary has not challenged petitioner's good faith here, and there is little doubt that petitioner brought the claim with an honest belief that a vaccine injury occurred.

In contrast to good faith, reasonable basis is purely an objective evaluation of the weight of the evidence.  Simmons v. Sec'y of Health & Hum. Servs., 875 F.3d 632, 636 (Fed. Cir. 2017).  In Cottingham v. Secretary of Health & Human Services, the Federal Circuit stated that the evidentiary burden for meeting the reasonable basis standard "is lower than the preponderant evidence standard."  971 F.3d 1337, 1346 (Fed. Cir. 2020).  Something "more than a mere scintilla" might establish the reasonable basis standard.  Id. at 1346.  Petitioners meet their evidentiary burden with "objective evidence."  Id. at 1344.  In categorizing medical records as objective evidence, the Federal Circuit stated, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation."  Id. at 1346.  Finally, the Federal Circuit in Cottingham specified that "we make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this court."  Id. at 1347. Collectively, Dr. Steinman's reports and Dr. Rostad's reports in this case establish that a reasonable basis exists.

### 2. Appropriateness of an Interim Award

Interim fee awards are available in Vaccine Act cases.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008).  However, petitioners are not entitled to fee awards as a matter of right; an award of interim fees is within the discretion of the special master.  See Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 92 (2016) (even after good faith and reasonable basis have been established, the special master must determine "whether to exercise his or her discretion to award attorneys' fees and costs"); cf. Avera, 515 F.3d at 1352 (holding that even though permitted under the Vaccine Act, an interim award was not appropriate in that case).

7

Often when deciding the appropriateness of an interim award, the undersigned will consider factors such as how protracted the proceedings are, whether attorneys have spent large sums on costly experts, and whether there is a situation that creates undue hardship on the petitioner or petitioner's counsel.  See Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372, 1375 (Fed. Cir. 2010); Avera, 515 F.3d at 1352.  The Circuit has also considered whether petitioners faced "only a short delay in the award" before a motion for final fees could be entertained.  Id.

The Federal Circuit has not attempted to specifically define what constitutes "undue hardship" or a "protracted proceeding."  In the undersigned's practice, interim fees may be appropriate when the amount of attorneys' fees exceeds $30,000, expert costs exceed $15,000, and the case has been pending for more than 18 months.  Ms. Rocha clears these hurdles.  Accordingly, an interim award for Ms. Rocha is appropriate.

As discussed below, interim awards for Ms. Gallagher's fees have previously been deferred.  However, Ms. Gallagher's request is being adjudicated now for several reasons.  Ms. Gallagher has slightly reduced the amount she is requesting and has modified her invoices to provide some additional details.  Ms. Gallagher began working on the case in 2014 and, therefore, warrants some reasonable payment, even though the amount she has requested remains unreasonable.  Ms. Gallagher's request for compensation accompanies Mr. Gage's request for compensation and delaying Mr. Gage's fees due to problems with Ms. Gallagher's billing seems unfair to Mr. Gage.  Finally, this decision awarding attorneys' fees and costs on an interim basis is being issued shortly after an Entitlement Decision, denying compensation.  As such, this decision may turn out to be the final decision awarding attorneys' fees and costs.[3]

### 3. Reasonableness of the Requested Amount

#### a. Standards for Assessing Reasonable Attorneys' Fees

Under the Vaccine Act, a special master may award reasonable attorneys' fees and costs.  42 U.S.C. § 300aa-15(e)(1).  Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours

---

[3] The prospect that Ms. Rocha may file a motion for review does not affect the reasonableness of the amounts requested in compensation.

8

expended on litigation, the lodestar approach.  Avera, 515 F.3d at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).  The undersigned is obligated to assess the reasonableness of the request for attorneys' fees and costs regardless of the lack of objection from the Secretary.  See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

Reasonable hours are not excessive, redundant, or otherwise unnecessary.  See Saxton, 3 F.3d at 1521.  When an attorney does the work of a paralegal or administrative assistant, he or she should be paid a rate commensurate with the nature of the work.  See Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 425 (2009) (noting that "the Special Master exercised appropriate discretion in denying requested costs for work performed by Petitioner's counsel's associate" when the special master determined "that the associate's time spent obtaining medical records was more consistent with paralegal duties"); Riggins v. Sec'y of Health & Human Servs., No. 99-382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009), mot. for rev. den'd (slip op. Dec. 10, 2009), aff'd, 406 F. App'x 479 (Fed. Cir. 2011).

Furthermore, attorneys should not charge for the performance of secretarial / clerical tasks.  Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997).  One example of a clerical task for which a charge is not appropriate is filing documents.  Guerrero v. Sec'y of Health & Human Servs., No. 12-689V, 2015 WL 3745354, at *6 (Fed. Cl. Spec. Mstr. May 22, 2015) (citing cases), mot. for rev. den'd in relevant part and granted in non-relevant part, 124 Fed. Cl. 153, 160 (2015), app. dismissed, No. 2016-1753 (Fed. Cir. Apr. 22, 2016).

Special masters may reduce the amount requested in attorneys' fees by percentages.  See Abbott v. Sec'y of Health & Hum. Servs., 135 Fed. Cl. 107, 111-12 (2017) (holding special master did not abuse his discretion in making percentage reductions for vague entries).

### b. Mr. Gage's Request for Attorneys' Fees

Mr. Gage requests payment at various rates ranging from $350 per hour to $393.00 per hour.  Pet'r's Mot., tab D.  These rates are consistent with rates awarded previously.  See Jimenez v. Sec'y of Health & Hum Servs., No. 17-1190V, 2023 WL 3712348, at *3 (Fed. Cl. Spec. Mstr. May 30, 2023); Loyd v. Sec'y of Health & Hum. Servs., No. 16-811V, 2023 WL 4170791, at * 3-4 (Fed.

Cl. Spec. Mstr. May 30, 2023); Heilig v. Sec'y of Health & Hum. Servs., No. 16-140V, 2023 WL 2320346, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 2, 2023).

In general, Mr. Gage's invoice contains sufficient detail to assess the activities for their reasonableness. The time requested generally appears reasonable. However, some activities in preparing for trial could benefit from more details. For example, an entry from September 22, 2021 for 2.7 hours stating "Trial prep, review of medical literature" could specify which medical articles were reviewed. An entry from October 8, 2021 for 3.7 hours stating "Trial prep, worked on direct exam questions" could specify the witness (or witnesses) on which Mr. Gage was focusing. See Abbott v. Sec'y of Health & Human Servs., 135 Fed. Cl. 107 (2017) (holding that the special master acted within his discretion in reducing an award based on billing entries that were "too vague to demonstrate the reasonableness" of attorney's work); see also Almanza v. United States, No. 13-130, 2018 WL 1704521, at *7 (Fed. Cl. Apr. 9, 2018) (reducing specific time entries with block billing by 50 percent because the Court could not assess the reasonableness of the activity). Mr. Gage is encouraged to be more specific in future invoices.

Given that Mr. Gage has been previously warned about a lack of description in his invoices, see Skinner-Smith v. Sec'y of Health & Hum. Servs., No. 14-1212V, 2022 WL 2452384, at *4 (Fed. Cl. Spec. Mstr. June 9, 2022) (citing cases), a reduction of five percent is appropriate. Ms. Rocha is awarded **$67,189.04** for Mr. Gage's work.

### c. Ms. Blume's Request for Attorneys' Fees

Ms. Blume requests payment at rates ranging from $350 per hour to $386 per hour. Pet'r's Mot. tab E. These rates match the rates awarded previously.

Like Mr. Gage's entries, Ms. Blume's entries could benefit from more specificity. For example, an October 13, 2020 entry for 4.6 hours is for "Review Medical Records." Ms. Blume could have identified the medical records. Similarly, an October 19, 2020 entry for 5.8 hours is for "Draft Brief." Ms. Blume could have explained the primary section of the brief she was writing. See Yalacki v. Sec'y of Health & Hum. Servs., No. 14-278V, 2020 WL 5049394, at *3 (Fed. Cl. Spec. Mstr. Aug. 12, 2020).

Like the request for Mr. Gage, Ms. Blume's invoice is reduced by five percent. Ms. Rocha is awarded **$42,635.81** for Ms. Blume's work.

### d. Mr. Gage's Paralegals' Request for Fees

Three paralegals from Mr. Gage's office have submitted invoices, Susan McNair, Brian Vance, and Eva Farina. Pet'r's Mot., tab F. Collectively, their proposed rates are appropriate. See Jimenez, 2023 WL 3712348, at *3.

The requested number of hours is reasonable. Ms. Rocha is awarded **$8,313.40** as fees for paralegals in Mr. Gage's office.

### e. Ms. Gallagher's Request for Attorneys' Fees

Judge Kaplan[4] determined that Ms. Gallagher should be compensated at a rate of $350 per hour for 2016, $363 per hour for 2017, and $400 per hour for 2018. De Souza v. Sec'y of Health & Human Servs., 141 Fed. Cl. 338, 346 (2018). Ms. Gallagher has proposed these rates. See Pet'r's Mot. tab H. They are accepted as reasonable.

The number of hours Ms. Gallagher requested has remained problematic. She has not exercised appropriate billing judgment. See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

In response to orders, Ms. Gallagher has decreased the number of hours for which she seeks compensation. In the January 17, 2019 motion, Ms. Gallagher requested the following:

| Ms. Gallagher's Original Request | | | |
|---|---|---|---|
| Years | Number of Hours | Hourly Rate | Subtotal |
| 2014-2016 | 151.15 | $350.00 | $52,902.50 |
| 2017 | 67.35 | $363.00 | $24,448.05 |
| 2018 – 1/17/2019 | 70.50 | $400.00 | $28,200.00 |
| Total | 289 | | $105,550.55 |

Pet'r's Mot. for Interim Fees and Costs, filed Jan. 17, 2019, at 6.

This request was denied for being "stunning." First Interim Fees Decision, 2019 WL 2406954, at *4. Ms. Gallagher slightly revised her invoices. See entries for Oct. 4, 2019; Oct. 9, 2019; Oct. 19, 2021. Some entries are now "N.C." for "no charge." For example, within 2018, Ms. Gallagher eliminated a fee for 24 items.

---

[4] Judge Kaplan assumed the position of Chief Judge in 2021.

11

| Ms. Gallagher's Revised Request Covering the Same Time | | | |
|---|---|---|---|
| Years | Number of Hours | Hourly Rate | Subtotal |
| 2014-2016 | 144.1 | $350.00 | $50,435.00 |
| 2017 | 64.15 | $363.00 | $23,286.45 |
| 2018 – 1/17/2019 | 68.05 | $400.00 | $27,220.00 |
| Total | 276.3 |  | $100,941.45 |

Pet'r's Mot. for Interim Fees and Costs, filed Dec. 22, 2022, at 105.

Although Ms. Gallagher has revised her entries from before January 17, 2019, the revisions constitute about 4 percent of the original amount requested. The request for the period covered by the original motion for attorneys' fees and costs on an interim basis still exceeds $100,000 for case without briefing and without a hearing. A request of this size remains "stunning."[5]

After submitting the stunning request for attorneys' fees and costs, Ms. Gallagher continued to work on the case for approximately 140 more hours before transferring the case to Mr. Gage for trial. For example, she sought information from doctors who treated Mr. Rocha. Ms. Gallagher also obtained reports from a second expert, Dr. Rostad. Ms. Gallagher's final invoice presents her entire work.

---

[5] By way of background, special masters have awarded final attorneys' fees and costs that exceed $100,000 in cases with much more work from attorneys and experts. Examples include: Fantini v. Sec'y of Health & Hum. Servs., No. 15-1332, 2023 WL 2137945 (Fed. Cl. Spec. Mstr. Jan. 26, 2023) (awarding $105,071.66 in a case resolved via a ruling on the record); Kelly v. Sec'y of Health & Hum. Servs., No. 16-0878, 2022 WL 3594383 (Fed. Cl. Spec. Mstr. July 27, 2022) (awarding $96,695.57 in attorneys' fees and costs in a case resolved via a ruling on the record and in which a motion for review was denied); Gonzalez v. Sec'y of Health & Hum. Servs., No. 17-0174, 2022 WL 3135297 (Fed. Cl. Spec. Mstr. July 8, 2022) (awarding $102,921.99 in attorneys' fees and costs in a settled case in which petitioner's attorney retained experts for entitlement and damages).

These cases do not establish an upper bound. However, they serve to illustrate the point that Ms. Gallagher's charges are outside the bounds of what other attorneys typically charge. By way of contrast, Ms. Rocha has not cited any cases in her pending motion that suggest that Ms. Gallagher's charges resemble the fees awarded in cases with other attorneys.

| Ms. Gallagher's Complete Request | | | |
|---|---|---|---|
| Years | Number of Hours | Hourly Rate | Subtotal |
| 2014-1/17/2019 (carried forward from table above) | 276.3 | $350.00-$400.00 | $100,941.45 |
| 1/17/2019-12/31/2019 | 90.05 | $400.00 | $36,020.00 |
| 1/02/2020-10/19/2021 | 51.00 | $424.00 | $21,624.00 |
| Total | | | $158,585.45 |

A detailed assessment reveals that Ms. Gallagher spends far more time on routine tasks compared with other attorneys who charge comparable rates. Examples of activities for which Ms. Gallagher has charged an unreasonable amount include (1) collecting medical records, which is a task for paralegals; (2) summarizing medical records, which paralegals often do; (3) recording activities with insufficient detail such that assessing the reasonableness of the activity is difficult to evaluate;[6] (4) preparing material to send to an expert, which is a clerical task;[7] (5) communicating with experts more frequently and for a greater amount of time than other attorneys who represent petitioners and who also charge approximately $400 per hour;[8] and (6) repeating reviews of material.[9] This list of unreasonably charged activities is not intended to be exhaustive. Similarly, the list of examples is not intended to capture all instances. A more detailed review would likely present other ways in which Ms. Gallagher's billing was excessive.

Documenting all the instances of unreasonable charges would consume a great deal of time, time which would not be spent on other cases. Instead, a rough

---

[6] One example is the Aug. 18, 2016 entry for "Review of email from client with question." Another example is June 23, 2017 entry for "Preparation of email to [counsel for respondent,] Justine Walters." A third example is 5 hours for "Review of records" on May 14, 2018.

[7] See entries for Nov. 17, 2016; Nov. 27, 2018; Dec. 11, 2018; and May 13, 2019.

[8] Examples include the set of entries on October 25, 2018; December 5, 2018; December 19, 2018.

[9] See entries on June 30, 2019; November 19, 2019; and January 10, 2020.

13

estimate of the amount of time will be made. From the undersigned's experience in overseeing numerous cases of varying complexity and evaluating numerous requests for attorneys' fees, it appears that a reduction of 20 percent provides a reasonable, if generous, award to Ms. Gallagher. Accordingly, Ms. Rocha is awarded **$126,868.36** for Ms. Gallagher's work.

### f. Mr. Gage's Non-Expert Costs

Mr. Gage has requested reimbursement for costs. See Pet'r's Mot., tab G, pdf 42-43. One item is a charge for copying more than nine thousand pages. While Mr. Rocha's medical records are extensive (see Exhibit 11), it is not entirely clear why any physical copies (as opposed to scans) were required. In future cases, Mr. Gage may be called upon to justify the reasonableness of making physical copies of materials. However, in the present case, Mr. Gage's implicit representation that copies were required is accepted due to Mr. Gage's status as an officer of the court. The remaining two items of non-expert costs (mailings and transcript invoices) are accepted as reasonable. Thus, Ms. Rocha is awarded **$4,153.32** in non-expert costs incurred by Mr. Gage.

### g. Ms. Gallagher's Non-Expert Costs[10]

Ms. Gallagher seeks reimbursement for costs she incurred for transcripts of status conferences, medical literature, and mailings. Pet'r Mot., tab H, pdf 106-16; Pet'r's Status Rep., filed Jan. 24, 2024, at 2. These are accepted as reasonable. Thus, Ms. Rocha is awarded **$426.34** as reimbursement of costs Ms. Gallagher incurred.

### h. Expert Costs

The remaining items of costs concern invoices from Dr. Steinman and Dr. Rostad. Pet'r's Mot, tab G, pdf 45-59. Reasonable expert fees are determined using the lodestar method, in which a reasonable hourly rate is multiplied by a reasonable number of hours. Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013). To determine the reasonableness of an expert's proposed rate, special masters may consider the "area of expertise; the education and training required to provide necessary insight; the prevailing rates for other comparably respected available experts; the nature, quality, and complexity of the information provided; [and] the cost of living in the expert's geographic area." Sabella v. Sec'y

---

[10] The First Interim Fee Decision reimbursed Ms. Gallagher for costs incurred through the filing of her first motion for an award of attorneys' fees and costs.

of Health & Human Servs., 86 Fed. Cl. 201, 206 (2009).  Furthermore, "[p]etitioner has the burden of providing the foregoing information concerning expert fees." Id.

Compensation for Dr. Steinman is relatively straightforward and easy.  He has requested compensation at a reasonable hourly rate, $550 per hour.  His invoice consists of preparing for and attending the hearing in December 2021 (37.75 hours).[11]  These hours are reasonable.  Thus, Ms. Rocha is awarded **$20,625** for Dr. Steinman's work.

Compensation for Dr. Rostad is more complicated.  He has requested a total of $135,738.75.  This request consists of the following:

| Dr. Rostad Request | | | |
|---|---|---|---|
| year | hourly rate | number of hours | subtotal |
| 2018 | $400 | 11.75 | $4,700.00 |
| 2019 | $415 | 66.75 | $27,701.25 |
| 2020 | $425 | 73.50 | $31,237.50 |
| 2021 | $450 | 160.00 | $72,000.00 |
| Non-professional time | | | $100.00 |
| Total | | 312.00 | $135,738.75 |

<u>Reasonable Hourly Rate</u>.  Dr. Rostad has billed at rates previously awarded in the Vaccine Program.  See <u>Porter v. Sec'y of Health & Hum. Servs.</u>, No. 18-132V, 2020 WL 6705553, at *3 (Fed. Cl. Spec. Mstr. Oct. 22, 2020).

While one special master's finding regarding an expert's reasonable hourly rate does not bind another special master, practical reasons support the adoption of an expert's hourly rate.  One practical reason is that the expert's qualifications and geographic area of practice rarely change.  Another practical reason is to avoid redoing an analysis that another special master has already done.  However, an expert's poor performance may justify a reduction in the expert's typically accepted hourly rate.  <u>Frantz v. Sec'y of Health & Hum. Servs.</u>, 146 Fed. Cl. 137, 146 (2019).

---

[11] The First Interim Fee Decision reimbursed Ms. Gallagher for costs associated with Dr. Steinman's preparation of two reports.

15

Reasonable Number of Hours. Dr. Rostad seeks compensation for more than 300 hours of work. See Pet'r's Mot., tab G, pdf 46. This number of hours is higher than the number of hours most experts spend on most cases.[12] Ms. Rocha recognizes that "Dr. Rostad's bill is large[r] than 'normal.'" Pet'r's Status Rep., filed Jan. 24, 2024, at 2.

A review of Dr. Rostad's invoice shows that the time spent on some tasks are excessive. For example, at the beginning of his participation, Dr. Rostad states that he spent 0.5 hours reviewing Mr. Rostad's death certificate. Pet'r's Mot., tab G, pdf 48 (Dec. 5, 2018). Thirty minutes cannot be accurate as the death certificate is one page. Exhibit 2. Another example is that on December 31, 2019, Dr. Rostad charged 1.0 hour for reviewing an order. Although Dr. Rostad does not identify the order, the overall context suggests that Dr. Rostad reviewed the order for briefs, issued December 20, 2019. This order is 12 pages. The length of the order appears incompatible with a suggestion that reading the order took 60 minutes.[13]

While those instances raise some questions about the accuracy of time-keeping entries that cannot be so easily verified, a larger issue concerns the scope of Dr. Rostad's work. As discussed in the February 1, 2024 Entitlement Decision, Ms. Gallagher decided to retain a pathologist to shore up Dr. Steinman's opinion that Mr. Rocha suffered from vasculitis. See Order, issued Oct. 26, 2018; Pet'r's Status Rep., filed Dec. 18, 2018. Whether a person suffers from vasculitis is within the competence of a pathologist, and Dr. Rostad opined about the possibility of vasculitis in Mr. Rocha. Exhibit 55 at 9-11. However, Dr. Rostad also opined

---

[12] For example, Dr. Steinman's first invoice sought compensation for Dr. Steinman's review of medical records, investigation of molecular mimicry, writing of his first report, reviewing Dr. Matloubian's report, and drafting his second report. Dr. Steinman's time totaled 44.45 hours. See Pet'r's First Mot. for an Award of Attorneys' Fees and Costs on an Interim Basis, filed Jan. 17, 2019. This amount was accepted as reasonable. First Interim Fees Decision, 2019 WL 2406954 at *5 .

Dr. Steinman's second (and final) invoice sought compensation for Dr. Steinman's preparing for and attending the hearing. Dr. Steinman spent 37.75 hours. Pet'r's Mot., tab G, pdf 45. The present decision also accepts Dr. Steinman's charge as reasonable.

In sum, Dr. Steinman's work on this case totaled 82.2 hours. Thus, Dr. Rostad has spent nearly four times as many hours working on this case as Dr. Steinman.

[13] To be clear, Dr. Rostad's reading of the briefing order is reasonable. The amount of time is simply unreasonable.

16

about how a flu vaccine can cause vasculitis. Id. at 11-16. Dr. Rostad's invoice reflects time spent on developing a causal theory. See Pet'r's Mot., tab G, pdf 49 (entries from March 25, 2019 through May 26, 2019). Dr. Rostad appears not to have any special expertise in immunology and Mr. Gage did not offer Dr. Rostad as an expert in immunology during the hearing. Tr. 37.

Thus, there was a mismatch. Dr. Rostad may have sufficient experience and qualifications in pathology to warrant compensation at $400 to $450 per hour when he is testifying about pathology, but Dr. Rostad, in this case, did not limit his opinions to his field of expertise.[14] Dr. Rostad, accordingly, spent time on topics such as autoimmunity that a doctor with a knowledge of immunology would not have spent. Dr. Rostad cannot both charge a relatively high rate of compensation and a relatively large number of hours. See Broeckelshen v. Sec'y of Health & Hum. Servs., 102 Fed Cl. 719, 731 (2011).

On the other hand, Dr. Rostad reasonably spent some time on activities for which experts typically do not charge. For example, Dr. Rostad spent more than 14 hours in reviewing respondent's pre-hearing brief and responding to it. See entries for March 9, 2021 through May 16, 2021. At Mr. Gage's request, Dr. Rostad prepared documents for the cross-examination of Dr. Ducatman (3.75 hours) and Dr. Matloubian (7.5 hours). See entries for Nov. 19, 2021 through Nov. 23, 2021. Mr. Gage stated that he "could not have presented this large and complicated case without the extensive assistance of Dr. Rostad." Pet'r's Status Rep., filed Jan. 24, 2024, at 2. Again, an expert's assistance to an attorney in drafting a brief and asking questions at a hearing is a reasonable activity. But, whether the amount of time Dr. Rostad spent is reasonable and whether Dr. Rostad should be compensated at his usual hourly rate for helping an attorney are less clear.

Separately, Dr. Rostad spent an unusually large amount of time preparing to testify. Of course, all witnesses should prepare before testifying and Mr. Rocha's medical history was complicated. However, the amount of time Dr. Rostad spent preparing to testify (102.75 hours) exceeds what experts typically spend. As a point of comparison, Dr. Steinman spent approximately 12 hours preparing to testify.

---

[14] Within the field of pathology, Dr. Rostad's opinions were less persuasive than the opinions of the pathologist whom the Secretary retained, Dr. Ducatman. See Entitlement Decision at 44. This disparity might suggest that Dr. Rostad's hourly rate for work in pathology is excessive.

17

When these factors are considered, it appears that a reasonable amount of compensation for Dr. Rostad is two-thirds of what he requested. Thus, for Dr. Rostad's work, Ms. Rocha is awarded **$90,944.96.**

Of the amount awarded to Dr. Rostad, Ms. Rocha requested that $3,000 be awarded to Ms. Gallagher for the retainers she paid. The balance is awarded to Mr. Gage. Pet'r's Status Rep., filed Jan. 24, 2024, at 2.

### 4. Summary

In total, a reasonable amount of attorneys' fees and costs for work performed through October 26, 2022 is **$361,156.23**.

\* \* \*

Accordingly, petitioner is awarded:

1. **A lump sum of $230,861.53 in the form of a check made payable to petitioner and petitioner's attorney, Richard Gage.**

2. **A lump sum of $130,294.70 in the form of a check made payable to petitioner and petitioner's attorney, Carol Gallagher.**

This amount represents reimbursement attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e). In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

                                                      s/Christian J. Moran
                                                      Christian J. Moran
                                                      Special Master